UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

VALERIE E. WILLIAMS,

               Plaintiff,

     -against-

WOOHDULL MEDICAL AND MENTAL HEALTH
CENTER; NEW YORK UNIVERSITY LANGONE
MEDICAL CENTER MILLHAUSER LABS; CITY
OF NEW YORK; MICHAEL R. BLOOMBERG, as
mayor, NEW YORK CITY HEALTH AND
HOSPITAL CORPORATION; EDWARD FISHKIN,
M.D., Network Medical Director,, Woodhull Medical
& Mental Health Center; LEONEL URCUYO, M.D.,
Chair, Executive Committee of the Medical Staff,
Woodhull Medical & Mental Health Center; and
PAUL H. KASTELL, M.D., Chairman, Obstetrics and
Gynecology, Woodhull Medical & Mental Health
Center,

               Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
**10-CV-1429 (NGG) (LB)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 2 7 2012   ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

       Plaintiff, Valerie E. Williams ("Williams"), brings this action against defendants

Woodhull Medical and Mental Health Center ("Woodhull"), New York University Langone

Medical Center Millhauser Labs ("NYU"), the City of New York, the New York City Health and

Hospital Corporation ("NYCHHC"), Dr. Edward Fishkin, Dr. Leonel Urcuyo, and Dr. Paul

Kastell, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986, Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e ("Title VII"), and New York state law.   (See Compl. (Docket Entry # 1).)

All of the defendants (collectively "Defendants") moved for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure.   (See Defs. Mot. for Sum. J. (Docket Entry # 45).)

On February 10, 2012, the court referred Defendants' Motion to Magistrate Judge Lois Bloom for

a Report and Recommendation ("R & R") pursuant to Federal Rule of Civil Procedure 72(b).

(Feb. 10, 2012, Order.)   On June 11, 2012, Judge Bloom recommended that the court grant Defendants' motion for summary judgment and dismiss Williams's action.   (R & R (Docket Entry # 62) at 30.)   On June 26, 2012, Judge Bloom granted Williams an extension of time to file objections to the R & R, setting a deadline of July 30, 2012.   (Docket Entry # 65.)

On July 30, 2012, Williams filed two objections to the R & R: one was filed by her attorney ("Pendergrass Objection") (Docket Entry # 68); the other was filed pro se ("Pro Se Objection") (Docket Entry # 67).   Defendants have a memorandum in opposition to the objections.   (Defs. Opp'n Mem. (Docket Entry # 69).)   As set forth below, Defendants' motion for summary judgment is granted.   The court assumes familiarity with the facts of this case.

I.   **PROCEDURAL HISTORY**

Williams commenced this action pro se on March 30, 2010.   (See Compl.)   She later acquired an attorney.   (See Notice of Appearance of Anthony L. Pendergrass (Docket Entry # 24).)   After doing so, Williams filed an Amended Complaint on consent.   (Docket Entry # 26.) The parties engaged in discovery (see, e.g., Stipulation and Protective Order (Docket Entry # 30)), and Defendants then sought leave to move for summary judgment (see Pre-Motion Conference Request (Docket Entry # 32)).   The court referred that request to Magistrate Judge Lois Bloom for decision and for a settlement conference.   (May 10, 2011 Order (Docket Entry # 33).)   Judge Bloom attempted to mediate a settlement; however, when those efforts did not succeed, Judge Bloom set a schedule for Defendants to move for summary judgment and for Williams to move to further amend her complaint.   (Aug. 8, 2011 Order.)

On August 19, 2011, Williams sought leave to amend her Complaint to add a new retaliation claim under Title VII and to drop her breach of contract claim.   (See Pl. Mot. to Am Compl. (Docket Entry # 35).)   The court referred this motion to Judge Bloom (Oct. 28, 2011

2

Order), who recommended that the motion be denied and that Plaintiff's breach of contract claim

be dismissed (R & R (Docket Entry # 44).)   After the period to object lapsed without any

objections, the court denied Williams' motion to amend and dismissed her breach of contract claim

pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.   (See Feb. 16, 2012 Order

(Docket Entry # 61).)

   Defendants served Williams with their Motion for Summary Judgment on September 19,

2011.   (See Defs. Mot. for Sum. J.)   The court referred this motion to Judge Bloom.   (Feb. 10,

2012 Order.)   Williams sought two extensions of time to oppose Defendants' Motion for

Summary Judgment.   (See Oct. 24, 2011 Pl. Mot. (Docket Entry # 38); Nov. 29, 2011 Pl. Mot.

(Docket Entry # 39).)   Both were granted.   (Oct. 24, 2011 Order; Nov. 30, 2011 Order.)   On

December 27, 2011, Williams's attorney moved for leave to withdraw from the case (See Mot. to

Withdraw as Att'y (Docket Entry # 40).)   Judge Bloom denied that motion (see Dec. 27, 2011

Order (Docket Entry # 42)), and Williams's attorney has continued to represent her following

Judge Bloom's Order (see, e.g., Pendergrass Objection).

   On January 17, 2012, Williams opposed Defendants' motion for summary judgment.   (Pl.

Opp'n Mem. (Docket Entry # 58-2).)   Defendants replied on February 10, 2012.   (Defs. Reply

Mem. (Docket Entry # 60).)   On June 11, 2012, Judge Bloom issued her R & R on this motion,

recommending that the court grant Defendants' motion for summary judgment and dismiss

Williams's action.   (See R & R at 30.)   On June 20, 2012, Williams filed a pro se request for an

extension of time to file objections to the R & R.   (Pl. Mot. (Docket Entry # 63).)   On June 25,

2012, Williams's attorney also filed a motion for extension of time to file objections to the R & R

on her behalf.   (Docket Entry # 64.)   On June 26, 2012, Judge Bloom granted the motions for

extension of time to file objections.   (Docket Entry # 65.)

3

On July 30, 2012, Williams filed two Objections to the June 11, 2012 R & R: one was filed by her attorney (Pendergrass Objection); the other was filed pro se (Pro Se Objection).

## II.   STANDARD OF REVIEW

### A.   Review of Magistrate Judge's Report and Recommendations

In reviewing the report and recommendation of a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000); see also Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM) (JO), 2010 U.S. Dist. LEXIS 23620, at *3 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the Report and Recommendation has been filed, the district court need only satisfy itself that there is no clear error on the face of the record.") (internal quotation marks and citation omitted).

The district court reviews de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). However, to obtain this de novo review of a magistrate judge's R & R, an objecting party "must point out the specific portions of the report and recommendation to which [he or she] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10–cv–2522 (JS) (WDW), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed.R.Civ.P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R & R]." (emphasis added)). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entergris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y.2008); see also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir.2002) (holding that plaintiff's objection to an R & R was "not specific enough" to "constitute an adequate objection under [ ] Fed. R. Civ. P. 72(b)").

"The objections of parties appearing pro se are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quoting Milano v. Astrue, 05-CV-6527, 2008 WL 4410131, at *24, (S.D.N.Y. Sept. 26, 2008)).   However, even where an objection has been filed pro se, "[a]n objection to a report and recommendation in its entirety does not constitute a specific written objection within the meaning of Rule 72(b)." Healing Power, Inc. v. Ace Cont'l Exports, Ltd., No. 07-cv-4175 (NGG)(RLM), 2008 WL 4693246, at *1 (E.D.N.Y. Oct. 17, 2008)

**B.      Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), a motion for summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).   The burden of showing the absence of any genuine dispute as to a material fact rests on the movant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).   A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).   A grant of summary judgment is proper "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Res. Servs., L.P., 22 F.3d 1219, 1224 (2d Cir.1994).   The nonmoving party may not rest on "mere allegations or denials" of the moving party's pleadings to survive summary judgment, but must demonstrate by affidavit or other admissible evidence "that there is a genuine issue of fact for trial." Anderson, 477 U.S. at 248.

5

A "genuine issue [is not] created merely by the presentation of assertions that are conclusory." Patterson v. County of Onieda, N.Y., 375 F.3d 206, 219 (2d Cir.2004). Likewise, "conjecture[ ] or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996).

## III.  DISCUSSION

### A.  Un-Objected to Recommendations

No party has objected to Judge Bloom's recommendation that the court should not decline jurisdiction over this case under the doctrine of primary jurisdiction (R & R at 13), nor has any party objected to Judge Bloom's recommendation that the following claims be dismissed: Williams's race and sex discrimination claims pursuant to 42 U.S.C. §§ 1981, 1985, and 1986 (id. at 12), and related claims for negligent and intentional infliction of emotional distress (id.); her hostile work environment claim pursuant to Title VII of the Civil Rights act of 1964 (id. at 14-19); and her due process claim pursuant to 42 U.S.C. § 1983 (id. at 24-29).  The court has reviewed the record and Judge Bloom's thorough and well-reasoned R & R for clear error and found none. Therefore, the court adopts these portions of the R & R, and notes that the parties have waived further judicial review of this issue by failing to object.  See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue.").  Accordingly, the court dismisses these claims with prejudice.

### B.  Williams's Pro Se Objections

In her pro se objection to the R & R, Williams 1) recounts the deterioration of her relationship with counsel, 2) claims that the withdrawal of her breach of contract claim, prior to the

6

R & R's issuance, was without her knowledge or consent, and 3) disputes two of the facts included in Defendant's statement of undisputed facts pursuant to Local Civil Rule 56.1(a).   (See Pro Se Objection at 1-3.)   Despite the lenient construction accorded pro se objections, none of Williams' objections prompts de novo review of any aspect of Judge Bloom's R & R.

> 1.   Relationship with Counsel

In her objection to the R & R, Williams reiterates that her relationship with counsel has been unsatisfactory.   (See id. at 1-3.)   As noted above, this issue has been raised previously: Williams's attorney moved for leave to withdraw from her case on December 15, 2011 as a result of their declining relationship (see Mot. to Withdraw as Att'y), and Judge Bloom denied that motion (see Dec. 27, 2011 Order).   Williams's attorney has since continued to represent her. (See, e.g., Pl. Opp'n Mem.; Pendergrass Objection).   In a subsequent letter to Judge Bloom, Williams acknowledged this continued representation.   (See July 6, 2012 Pl. Ltr. (Docket Entry # 66) ("I shall assume that he and his co-counsel want to continue to be my representation in this matter and will be filing the necessary documents for my appeal.").)   Williams's attorney has since filed the objection to the R & R (see Pendergrass Objection) that she seemed to anticipate in her letter.

Williams' comments in her pro se objection about her relationship with her attorney do not address or object to any of the recommendations in Judge Bloom's R & R.   Williams does not discuss how her relationship with her attorney affected the validity of Judge Bloom's R & R.   To the extent that they represent a generalized objection to the entire R & R, such an objection "does not constitute a specific written objection within the meaning of Rule 72(b)," and therefore does not lead to de novo review of any portion of the R & R.   Healing Power, Inc., 2008 WL 4693246, at *1.

2.    Breach of Contract Claim

Williams asserts that her attorney withdrew her breach of contract claim without her knowledge or consent.    (See Pro Se Objection at 1.)    Williams' attorney filed a motion on August 19, 2011, seeking, inter alia, to withdraw her breach of contract claim.    (See Pl. Mem. in Supp. of Mot. to Amend Compl. (Docket Entry # 35-3) at 2 ("Plaintiff seeks to amend the complaint by deleting the Breach of Contract causes of action.").)    Williams' attorney made this motion well before he moved to withdraw from the case.    In a previous Report and Recommendation, filed January 31, 2012, Judge Bloom responded to that motion by recommending that Williams' breach of contract claim be dismissed rather than allow Williams to amend her Complaint to withdraw the claim.    (See R & R at 7.)    No party objected, and the court adopted Judge Bloom's January 31, 2012 Report and Recommendations in its entirety.    (See Feb. 16, 2012 Order.)    Dismissal of Williams's breach of contract claim is therefore not subject to further review by the court.    See Wagner & Wagner, LLP, 596 F.3d at 92.    If Williams believes that this decision on the part of her attorney compromised her case, then her recourse is a separate action against her attorney.

3.    Disputed Facts in Defendant's Rule 56.1 Statement

Finally, Williams asserts that the "only evidence and statements presented" in the Report and Recommendation are Defendants', noting two such statements about the neonatal fatality that she now disputes: (1) "Plaintiff approved a 35 year old patient who was in early labor for a vaginal delivery," (R & R at 3 (citing Defs. 56.1 Statement (Docket Entry # 46) ¶¶ 17-18)) and (2) "[T]he mother returned to the hospital several days after the delivery and was treated for a uterine rupture" (id. (citing Defs. 56.1 Statement ¶¶ 24, 28)).    With regard to the first statement, Williams states in her objection that she was not involved in prenatal care of the patient, was bound by the patient's stated wish to not perform a caesarian delivery, and that the patient continued to decline a

8

caesarian once the patient was warned of the fetus's slow heartbeat; with regard to the second statement, Williams states that the patient was not treated with surgery, only antibiotics.  (See Pro Se Objection at 2-3.)

Judge Bloom clearly did not commit any error by relying on the statements to which Williams now objects, based on the record before Judge Bloom at the time she issued the R & R.[1] The new facts that Williams attempts to add in her objections do not contradict the accuracy of Defendants' 56.1 Statement per se; Williams believes this additional information clarifies the statement the Defendants offered.  (Pro Se Objection at 2.)   However, Williams does not assert that any of Judge Bloom's recommendations depended upon the facts Williams now disputes. Nothing in Judge Bloom's analysis depended on knowing whether Williams was the patient's treating physician before the patient entered into labor, or if the patient was warned about the fetus's bradycardia, or if the patient was treated for a uterine rupture by surgery or antibiotics. Therefore, her comments about these facts do not amount to an objection to any of the recommendations in the R & R.  To the extent that they represent a general objection to the R & R overall, this objection "does not constitute a specific written objection within the meaning of Rule

---

[1]        As Judge Bloom explained in her R & R, "Defendants submitted a statement of undisputed material facts pursuant to Local Civ. R. 56.1(a)" to accompany their motion for summary judgment.  (R & R at 2 n.1.)   The Local Rules required the party opposing the motion, here Williams, to answer this statement.  See Local Civ. R. 56.1(b). "[U]nless specifically controverted by a correspondingly numbered paragraph" in the opposing party's reply, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion."   Local Civ. R. 56.1(c).  As Judge Bloom further explained in her R & R, she did not rely simply on the statements in Defendants' 56.1(a) statement, but "deem[ed] admitted only those facts . . . that [were] supported by admissible evidence and not controverted by the record." (R & R at 2 n.1 (citing Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).)  Williams' response to Defendants' 56.1 statement did not contradict the "undisputed facts" asserted by Defendants about the neonatal fatality, and because Defendants' 56.1 Statement cited to apparently admissible evidence in support of their description of the neonatal fatality (see Gomez-Sanchez Decl. Ex. D (Docket Entry # 55-4)), those assertions were properly admitted for the purposes of the motion, per Local Civ. R. 56.1(c).

72(b)," and does not prompt de novo review of any portion of the R & R.  Healing Power, Inc.,
2008 WL 4693246, at *1.[2]

### C.    Retaliation Claim

In a separate document, filed by her attorney, Williams objects to Judge Bloom's
recommendation that Defendants' motion for summary judgment be granted as to Williams's
claims of retaliation under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII").  (See
Pendergrass Objection at 1.)   Williams claims that Defendants engaged in "a plethora" of adverse
actions subsequent to her meeting with Reginald Odom, a vice-president at her employer, at which
she complained that she was the target of discrimination.  (Id. at 3.)   The adverse actions
Williams refers to are Defendants' 1) failure to convene the Preliminary Informal Review
Committee to review Dr. Kastell's request for corrective action against Williams, which allegedly
deprived her of an opportunity to "address the issues that were raise[d] relative to her professional
conduct," 2) alleged delay in reporting an unexpected neonatal death to the State of New York
Department of Health, Office of Professional Medical Misconduct, and 3) termination of
Williams's employment.  (See id. at 3.)   Because these alleged actions occurred after Williams'
contact with Odom, she argues that their timing gives rise to an inference that the Defendants
engaged in these actions in retaliation for Williams's protected conduct, in violation of Title VII.
(Id. (citing Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).)   Although
Williams acknowledges that Defendants have provided non-retaliatory reasons for their actions,

---

2       The court notes also Williams' reference to an April 2, 2012, letter to the court in which she asked the court to
allow her to locate other counsel because, she alleged, Mr. Pendergrass has neglected her case; Williams objects to the
court's lack of specific response to this letter.   (Pro Se Objections at 3.)   Regardless of whether the court replied to
Williams' letter, Williams was free to replace her attorney with a different one, or represent herself.   This court and
Judge Bloom both gave Williams multiple opportunities to file an opposition to both the summary judgment motion
and the R & R about the motion, as the procedural history discussed above indicates.   The court believes that
Williams had received adequate opportunities to make her case, whether with her current attorney or a different one.

she argues that summary judgment is improper because "it is not inconceivable that a reasonable jury might find the explanations offered by Defendants to be nothing more than pretextual." (Id. at 4.)

The court considers this argument and reviews the portion of Judge Bloom's report that addresses the retaliation claims de novo.

    1.    <u>Retaliation Standards Under Title VII</u>

Analysis of a motion for summary judgment Title VII retaliation claim proceeds according to a burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 110 (2d Cir. 2010). Under this framework, the plaintiff bears the initial burden to "establish a prima facie case of retaliation," by showing "(1) that [he or] she participated in a protected activity, (2) that [he or] she suffered an adverse employment action, and (3) that there was a causal connection between [his or] her engaging in the protected activity and the adverse employment action." <u>Id.</u> at 110 (citing <u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 461 F.3d 199, 205-06 (2d Cir.2006)).

One method of showing causation in retaliation cases is indirectly, "by showing that the protected activity was closely followed in time by the adverse employment action." <u>Gorman-Bakos v. Cornell Coop. Extension of Schenectady County</u>, 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks and alterations omitted); <u>see also</u> <u>Gorzynski</u>, 596 F.3d at 110. However, if "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, [then] an inference of retaliation does not arise." <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001).

"If a plaintiff sustains the initial burden" of establishing a prima facie case of retaliation, "a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis,

the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse

employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)

(citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998)).   "However, once an

employer offers such proof, the presumption of retaliation dissipates and the employee must show

that retaliation was a substantial reason for the adverse employment action." Id. (citing Fields v.

New York State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116,

120-21 (2d Cir.1997)).

   2.   Williams's Retaliation Claim

In her Amended Complaint, Williams alleged that Defendants took adverse employment

actions in retaliation against her following her April 10, 2009 complaint to Reginald Odom, her

employer's Vice President of Employee and Labor Relations, that she had been subjected to a

hostile work environment resulting from impermissible race and sex discrimination.   (See Am.

Compl. ¶¶ 36-37.)   The alleged adverse actions included 1) removing her from the on-call

schedule as an Attending physician in Labor and Delivery; 2) reassigning her to conduct a research

project; 3) initiating an investigation with, and making a report of Williams's alleged negligence

to, the State of New York Department of Health Office of Professional Medical Misconduct,

regarding the unexpected neonatal death of one of Williams's patients; and 4) failure to reappoint

her to her position as an Attending OB-GYN Physician.[3]   (See id. ¶¶ 39, 42, 59, 57; Pl. Opp'n

Mem. at 9.)   Williams claimed that Defendants took these actions in retaliation for her complaint

to Odom and subsequent, related complaints, in violation of Title VII.   (Id. ¶¶ 117-21.)   Williams

---

[3]        Williams also alleged that Defendants retaliated against her by denying her a leave of absence to attend a
Continuing Medical Education course (see Am. Compl. ¶53), however, she has not addressed this claim in any way in
her opposition brief (see Pl. Opp'n Mem. at 8-9).   Therefore, the court considers this claim abandoned.   See
Robinson v. Roosevelt Union Free Sch. Dist., No. 10-CV-834 (SJF) (ETB),00202012 WL 1980410, at *6 (E.D.N.Y.
May 31, 2012) (citing Taylor v. City of New York, 269 F. Supp. 2d 68, 72 (E.D.N.Y. 2003)).

also claimed that Defendants failed to "provide [Williams] with due process when she requested to avail herself of the remedies provided for by the bylaws and rules of the Defendants," referring to Defendants' failure to convene the Preliminary Informal Review Committee to review Dr. Kastell's request for corrective action against her.   (Pl. Opp'n Mem. at 9.)   According to Williams, this last action was retaliatory because it deprived her of an opportunity to "address the issues that were raise[d] relative to her professional conduct."   (Pendergrass Objection at 3.)

Williams argues that Defendants' adverse actions followed in close temporal proximity to her protected conduct, and that this establishes her prima facie case of retaliation under the principle expressed in Gorzynski and Gorman-Bakos.   (See Pendergrass Objection at 3.)   This argument fails because the adverse actions taken against her began well before she complained to Odom that she was being subjected to a hostile work environment.   Williams acknowledges that her troubles with Defendants began in October 2008, following an unexpected neonatal fatality that occurred while she was the on-call attending obstetrician in the Labor and Delivery department at Woodhull (see Pl. 56.1 Statement (Docket Entry # 58) ¶ 7; Defs. 56.1 Statement ¶ 16.); that she was removed from her assignment in labor and delivery in November, 2008, following that incident (see Pl. 56.1 Statement ¶ 9); that Dr. Kastell "initiated a 'Request for Corrective Action'" against Williams in March 2009 (see id. at ¶ 12); and that she was notified later that month of Dr. Kastell's request and the resulting plan for a Preliminary Informal Review Committee meeting (see id. ¶ 13).   All of these events occurred prior to Williams's April 10, 2009 complaint to Odom.   Where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."   Slattery, 248 F.3d at 95.   Thus, Williams cannot establish a prima facie case of retaliation based on the temporal

13

proximity between the adverse employment actions and her protected activity, even though some of the things about which Williams complains occurred after she engaged in protected activity.

Even if Williams could establish a prima facie case of retaliation, which she cannot, Defendants have articulated legitimate, non-retaliatory reasons for the adverse actions taken against her. Defendants attribute their decision to remove Williams from the on-call schedule and reassign her to a research project to the neonatal fatality that occurred in October 2008. (See Defs. Mem. in Supp of Mot. for Summ. J. (Docket Entry # 56) at 18 ("Alan Aviles, President and Chief Executive Officer of HHC, demanded that plaintiff be removed from patient contact after a blind review of her actions with respect to the bad outcome in October 2008 because he was concerned about the quality of care she was providing to the patients at Woodhull.").) Defendants assert that Williams was reported to the State of New York Department of Health Office of Professional Medical Misconduct because, "pursuant to statute, patient deaths must automatically be reported to the State of New York."[4]   (Id.)   See N.Y. Pub. Health Law § 2805-L (2)(a) (McKinney 2011.)   Defendants cited Dr. Kastell's recommendation as justification for their decision not to reappoint Williams to her position; Dr. Kastell claimed that "she ha[d] evidenced a series of gross errors in clinical judgment, assessment of patients['] clinical conditions and

---

[4]        According to Defendants, the incident was first reported to the State of New York Department of Health in time to comply with that department's guidelines concerning the unexpected death of a patient (see Defs. 56.1 Statement ¶¶ 25-27), and the Office of Professional Medical Misconduct was aware of the incident by at least February 2009, when it requested records pertaining to the incident (see Gursky Decl. (Docket Entry # 49) ¶ 9). Williams has introduced no evidence in support of her assertion that Defendants initiated the investigation with the Office of Professional Misconduct subsequent to, and because of, her protected conduct in April 2009. Her claim appears to be based only on the statement in her Complaint that she was not notified of the investigation until "November 7, 2009, [when she] received a certified letter from the Office of Professional Medical Conduct, dated November 2, 2009, informing her that she was being investigated because of alleged negligence" (Pl. Am. Compl. ¶ 58.) Even if this claim were supported by admissible evidence, which it is not, this statement would establish only the date on which she was notified of the investigation by the agency. It would not contradict Defendants' assertion that that incident was reported within the time period established by the State of New York Department of Health. Thus, there is no evidentiary support for the claim that Defendants reported the neonatal fatality to the State government after Williams' protected activity.

14

negligent decision making."  (Id.)   Regarding Williams's claims that Defendants failed to convene a Preliminary Informal Review Committee meeting to review Dr. Kastell's request for corrective action against her, Defendants answered that "between April 2009 and October 2009," several attempts were made to schedule this meeting, but "Plaintiff's attorneys continued to advise [HHC's counsel] that they were unprepared to conduct the Preliminary Informal Review." (Hartman Decl. (Docket Entry # 50) ¶¶ 9-10.)

Defendants have articulated legitimate, non-retaliatory reasons for their adverse employment actions against Williams.   Therefore, even if she had established a prima facie case of retaliation, the burden would again fall to her to "show that retaliation was a substantial reason for the adverse employment action[s]."  Jute, 420 F.3d at 173.   Williams has not argued that the reasons Defendants provided for these actions were pretextual, and has introduced no evidence to support such an inference.   Thus, Williams has not shown that a genuine issue of material fact exists in her case.   See Patterson, N.Y., 375 F.3d at 219 (holding that a genuine issue of material fact is not "created merely by the presentation of assertions that are conclusory.").   Because no rational jury could find in her favor on these facts, summary judgment is proper.   See Fed. R. Civ. P 56(a); Gallo, 22 F.3d at 1224.

### D.   Conclusion

For the reasons set forth above, the court ADOPTS Judge Bloom's R & R in its entirety; accordingly, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

s/NGG

Dated: Brooklyn, New York
       August 27, 2012

NICHOLAS G. GARAUFIS
United States District Judge